**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FERNANDO MISAEL ALVARADO VALDEZ, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*<br><br>Plaintiff,<br><br>v.<br><br>RIGHT TIME JOB, INC.<br>d/b/a GIAS CONSTRUCTION, and GIAS MIAH<br><br>Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff FERNANDO MISAEL ALVARAOD VALDEZ ("Plaintiff"), on behalf of himself and others similarly situated, hereby files this Class and Collective Action Complaint against Defendants RIGHT TIME JOB, INC. d/b/a GIAS CONSTRUCTION (the "Corporate Defendant"), and GIAS MIAH (the "Individual Defendant", and collectively with the Corporate Defendant, the "Defendants"), and states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime wages, (2) liquidated damages, and (3) attorneys' fees and costs.

1

2. Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime wages, due to being paid at a fixed rate (2) unpaid spread of hours premiums, (3) frequency of pay violation, (4) statutory penalties, (5) liquidated damages, and (6) attorneys' fees and costs.

3. Defendants operate a home improvement company under the name RIGHT TIME JOB, INC., which offers services such as painting, electric, plumbing, and home renovations.

4. Plaintiff and others similarly situated are victims of Defendants' scheme to underpay employees. Specifically, Defendants compensated Plaintiff and Class members a set amount per week despite the fact that the amount of hours that Plaintiff and Class members were required to work per week would place the compensation below the statutory required wage.

5. Defendants failed to compensate Plaintiff and others similarly situated overtime wages for all relevant weeks where they worked over 40 hours.

6. Defendants failed to compensate Plaintiff and others similarly situated for their earned spread of hours for workdays lasting ten hours or longer.

7. Defendants failed to compensate Plaintiff and others similarly situated within seven (7) days, pursuant to state law.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

9. Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391.

## **PARTIES**

10. Plaintiff FERNANDO MISAEL ALVARADO VALDEZ is a resident of Queens County, New York.

11. Corporate Defendant RIGHT TIME JOB, INC. is a domestic business corporation duly organized under the laws of the State of New York with a principal place of business and address for service of process located at the address of 8212 101st Ave FL 1, Ozone Park, NY 11416.

12. Individual Defendant GIAS MIAH is the principal and executive officer of Corporate Defendant, exercises operational control as it relates to all employees including Plaintiff. GIAS MIAH exercises the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff. At all times, GIAS MIAH exercised functional control over the business and financial operations of Corporate Defendant. GIAS MIAH had the power and authority to supervise and control Plaintiff's employment and could reprimand employees.

13. Plaintiff personally observed Individual Defendant GIAS MIAH take an active part in the day-to-day management of the business including, but not limited to:

   a. Individual Defendant GIAS MIAH signed all the checks that Plaintiff received during the course of his employment;

   b. Individual Defendant GIAS MIAH set Plaintiff's schedule and directs Plaintiff to his worksite for the week;

   c. Individual Defendant GIAS MIAH's duties involved giving orders and managing employees;

    d. Individual Defendant GIAS MIAH had exclusive power to determine the wages of Plaintiff and Class members. Employees who request raises must obtain approval from Individual Defendant GIAS MIAH; and

    e. Individual Defendant GIAS MIAH had the power to terminate employees. In fact, Individual Defendant GIAS MIAH personally terminated Plaintiff in March 2024.

14. Individual Defendant GIAS MIAH possess the ability, power, and discretion to unilaterally change Plaintiff's and Class members' schedule, rate of pay, and employment status.

15. Individual Defendant GIAS MIAH may exert similar control to other similarly situated employees.

16. This Court has personal jurisdiction over Defendants in that they are incorporated in the state of New York or operate their headquarters from the State of New York.

17. Corporate Defendant engages in an enterprise whose annual volume of sales made or business done is not less than $500,000, the Defendants are thus employers subject to the jurisdiction of the FLSA.

18. At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL and any Regulations thereunder.

19. At all relevant times, the work performed by Plaintiff and Class members was directly essential to the business operated by Defendants.

20. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTION ACTION ALLEGATIONS

21. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including, but not limited to painters, electricians, plumbers, laborers, among others, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

22. At all and relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated have had substantial job requirements and pay provisions, and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules all culminating in a willful failure and refusal to pay them their proper wages, including overtime, due to straight pay for hours worked beyond 40 hours.

23. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendant. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

## RULE 23 CLASS ALLEGATIONS

24. Plaintiff brings claim for relief pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including but not limited to painters, electricians, plumbers, laborers, among others, employed by Defendant on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class Period").

25. All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The member and identity of the Class members are

determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

26. The proposed Class is so numerous that a joinder of all members is impracticable and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons are unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty members of the Class.

27. Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay proper wages, including overtime, in accordance to 12 N.Y.C.R.R. § 142, (ii) failing to pay spread of hours premiums, (iii) failing to pay manual workers within seven (7) calendar days after the end of their workweek, (iv) failing to provide wage and hour notices, at date of hiring, per requirements of the NYLL, and (v) failing to provide proper wage statements per requirements of the NYLL.

28. Defendants' policies and practices affected all Class members similarly, and Defendant benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

29. Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and

competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

30. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expense and burden of individual litigation would make it extremely difficult or impossible for the individual Class members are to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources, however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues to this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

31. Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former

employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

32. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

   a. Whether Defendants employed Plaintiff and Class members within the meaning of the NYLL;

   b. What were and are the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendant did not pay Plaintiff and Class members;

   c. At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class members for their work;

   d. Whether Defendants properly notified Plaintiff and Class members of their hourly rate and overtime rate;

   e. Whether Defendants paid Plaintiff and Class members proper wages for all hours worked, including overtime hours;

   f. Whether Defendants provided wage and hour notices to Plaintiff and Class members, at the date of hiring and annually, per requirements of the NYLL; and

   g. Whether Defendants provided proper wage statements to Plaintiff and Class Members per requirements of the NYLL.

## STATEMENT OF FACTS

**Wage and Hour Allegations:**

33. On or around September 2023, Plaintiff was hired by Defendants to work as a painter. During his employment, Plaintiff worked at various locations under the orders of Defendants in and around New York. Plaintiff's employment with Defendants was terminated on March 2024.

34. From the start of his employment until the end, Plaintiff was scheduled to work six (6) days per week for roughly 10 hours each day. Plaintiff did not have a set schedule as Individual Defendant GIAS MIAH required Plaintiff to come into work whenever he was called upon. Plaintiff routinely worked sixty (60) hours every week.

35. From the start of his employment to his termination, Plaintiff was paid at a flat rate of one hundred sixty dollars ($160) per day or nine hundred sixty dollars ($960) per week for a 6 day week, regardless of his hours.

36. Throughout Plaintiff's employment by Defendants, Plaintiff was not given a meal break for the duration of his shifts. As a result, Plaintiff would eat while he worked.

37. There was never any agreement between Plaintiff and Defendants that the $960 would cover Plaintiff's overtime work. Nor could there have been such an agreement, as $960 for 60 hours of weekly work fall well below statutory wage requirements under NYLL.

38. At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Class members, were never compensated overtime pursuant to the FLSA and NYLL.

39. At all relevant times, Plaintiff and Class members were improperly compensated for their work pursuant to NYLL, including NYLL's Minimum Wage Order for Miscellaneous Industries and Occupations. 12 N.Y.C.R.R. § 142.

40. At all relevant times, Plaintiff and Class members were never compensated for all spread of hours premiums for workdays lasting more than ten hours.

41. At all relevant times, Defendants failed to properly compensate Plaintiff in a timely manner as required by the NYLL. Under New York Labor Law, all manual worker(s) must be paid on a weekly basis. Pursuant to the New York State Department of Labor, manual workers include non-exempt employees who spend more than twenty-five percent (25%) of their working time performing physical labor. At all relevant times, Plaintiff was employed as a painter by Defendants, his main duties involved primarily manual labor. Defendants compensated Plaintiff with his wages approximately 9-10 calendar days after the last day worked in his workweek. By doing so, Defendants violated Labor Law § 191(1)(a), which requires "manual workers" to be compensated "not later than seven calendar days after the end of the week in which wages are earned." Even more egregious, Defendants still have not paid Plaintiff for the work Plaintiff completed in February and March of 2024 to date. Similarly, Class members suffered from Defendants' failure to compensate them in a timely manner.

42. Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs, and Class members for all earned wages pursuant to NYLL or the FLSA.

43. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs, and Class members the proper overtime rate for all hours worked in excess of forty (40) in each workweek.

44. Defendants knew that Plaintiff worked for six (6) days a week, as Defendants were the ones to require such work. Defendants knew that despite requiring such work they were not compensating Plaintiff at all for this work. Further, Defendants knew that Plaintiff was scheduled

to work over forty (40) hours per week, as Defendants were the ones to create such schedules. Defendants therefore knew that any failure to pay wages would also include the failure to pay overtime wages.

45. Defendants never provided Plaintiff and Class members with wages notices at hiring, as required by New York Lab. Law § 195(1).

46. Plaintiff and Class members likewise did not receive proper wage statements from Defendants, as required under NYLL. The checks and cash payments that were disbursed to Plaintiff and Class members were accompanied by nothing more than the amount paid to Plaintiff, the form of payment, and the week the payment was for. The payments do not include any information related to regular and overtime rates of pay, regular and overtime hours worked, gross wages, deductions, allowances, and net wages as required by New York Lab. Law § 195(3).

47. Therefore, Defendants directly violated the Work Theft Protection Act ("WTPA") – incorporated in the NYLL – when Defendants knowingly and willfully operated their business with a policy of not providing wage notices and proper wage statements to Plaintiff and Class Members.

48. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and

11

> how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

49. Had Defendants provided Plaintiff and Class members with wage statements containing a detailed breakdown of Plaintiff's regular and overtime hours and listing Plaintiff's regular and overtime rates, as required under NYLL § 195(3), it would have been self-evident that Plaintiff was being underpaid, since a proper wage statement would have shown that Plaintiff was entitled to no less than $1,050 per week for 40 hours of regular work and 20 hours of overtime work in 2023 or $1,120 per week for 40 hours of regular work and 20 hours of overtime work in 2024.

50. Faced with this undeniable proof of their unlawful wage practices, Defendants would have had to either (a) increase Plaintiff's wages to the legally required amount or (b) forthrightly acknowledge, by way of the wage statement, that Plaintiff was underpaid, which would readily inculpate Defendants in court. Either possibility would have allowed Plaintiff to more effectively vindicate his rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

51. The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class members. This delayed payment caused Plaintiff and Class members to struggle to pay bills and other debts.

52. Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

53. Because Defendants did not produce proper wage statements containing the actual

wages to which Plaintiff was entitled (and the proper deductions), Defendants could not report to the IRS and Social Security Administration, through proper W-2s, Plaintiff's proper earnings for the year, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

54.    The effect of not reporting or underreporting wages on an employees' W-2 was, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paysubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

55. "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

56. Here, it is clear that Defendants' failure to provide Plaintiff and Class members with proper wage statements entailed "concrete, downstream consequences" involving monetary injury, because the direct effect was to reduce Plaintiff and Class members' entitlement to social security.

57. Courts agree that the misreporting of earnings constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

58. The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees, rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class members lost benefits by virtue of how Defendants reported, or failed to report, their income, which was in turn caused by the absence of legally compliant wage statements. That is why "Plaintiff[] [has] standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

59. Whether or not any Class members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

60. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent either failed to send a W-2 to the IRS or sent a W-2 that underreported Plaintiff's true earnings. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)). In either case, this was the result of Defendants' failure to issue legally compliant wage statements.

61. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

62. Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

63. At all relevant times, Defendants were and continue to be employers engaged in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff is a covered individual within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

64. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

65. At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

66. At all relevant times, Defendants had a policy and practice that failed to pay proper overtime to Plaintiff and FLSA Collective Plaintiffs for all hours worked, in violation of the FLSA.

67. At all relevant times, Defendants had a policy and practice that failed to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and FLSA Collective Plaintiffs for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA.

68. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff and FLSA Collective Plaintiffs intend to obtain these records by appropriate discovery proceedings to be

taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

69. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked, including overtime hours, when Defendants knew or should have known such was due.

70. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

71. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs is entitled to liquidated (i.e., double) damages pursuant to the FLSA.

72. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages including unpaid overtime wages, plus an equal amount as liquidated damages.

73. Plaintiff and FLSA Collective Plaintiffs is entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

74. Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

75. At all relevant times, Plaintiff and Class members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

76. Defendants knowingly and willfully failed to pay Plaintiff and Class members proper regular and overtime wages, in violation of the NYLL.

77. Defendants knowingly and willfully failed to pay Plaintiff and Class members their spread of hours premiums for shifts worked in excess of ten (10) hours, in violation of the NYLL.

78. Defendants knowing and willfully failed to pay Plaintiff and Class members within (7) calendar days after the end of the week in which wages are earned, in violation of NYLL.

79. Defendants knowingly and willfully failed to provide Plaintiff and Class members with proper wage and hour notices as required under the NYLL. Due to Defendants' NYLL violations, Plaintiff and Class members are entitled to recover from Defendants unpaid minimum wages, unpaid overtime wages, unpaid spread of hours premiums, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to the NYLL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, the FLSA Collective Plaintiffs, and Class members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

b. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid regular and minimum wages, due under the FLSA and the NYLL;

d. An award of unpaid overtime wages, due under the FLSA and the NYLL;

e. An award of unpaid spread of hours premiums, due under the NYLL;

f. An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

g. An award of liquidated damages as a result of Defendants' willful failure to pay wages pursuant to the FLSA and NYLL;

h. An award of back pay, front pay, compensatory damages, punitive damages, damages for egregious emotional distress, and all other penalties the Court deems appropriate as a result of Defendants' willful retaliatory conduct against Plaintiff, pursuant to the FLSA and the NYLL;

i. An award of pre-judgment and post-judgment interests, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

j. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

k. Designation of the action as a class action pursuant to F.R.C.P 23;

l. Designation of Plaintiff as Representative of the Class;

m. Designation of Plaintiff's Counsel as Class Counsel; and

n. Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demand trial by jury on all issues so triable as of right by jury.

Dated: May 31, 2024 Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

By:    */s/ C.K. Lee*
C.K. Lee, Esq. (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: (212) 465-1180
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs, and the Class*